```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
FOOD AUTHORITY, INC.,

                    Plaintiff,            MEMORANDUM & ORDER
                                          10-CV-1738 (JS)(WDW)
          -against-

SWEET & SAVORY FINE FOODS, INC.
D/B/A S&S FINE FOODS
and ROCCO MACCHIA,

                    Defendants.
----------------------------------------X
APPEARANCES:
For Plaintiff:      Bruce Levinson, Esq.
                    Law Offices of Bruce Levinson
                    747 Third Avenue, 4th Fl.
                    New York, NY 10017

For Defendants:     Leonard Kreinces, Esq.
                    Kreinces & Rosenberg, P.C.
                    900 Merchant Concourse, Suite 305
                    Westbury, NY 11590
```

SEYBERT, District Judge:

On January 21, 2011, the parties attended a pre-motion conference to discuss Plaintiff's letter request to move for summary judgment. After considering the parties' pleadings, previously submitted preliminary injunction papers, Rule 56.1 Statements, pre-motion conference letters, and pre-motion conference oral argument[1], the Court concluded that the relevant facts were undisputed, and the applicable legal issues were uncomplicated.[2] So, rather than have

---

[1] Upon the Court's questioning, Defendants failed to identify any arguments, defenses, or legal authority they did not previously cite in their written submissions. Regretfully, there is no transcript of the pre-motion conference.

[2] By deciding the summary judgment motion in this expedited manner,

the parties brief Plaintiff's motion, the Court instead granted Plaintiff's summary judgment motion, made orally at the conference, and directed the parties to prepare submissions limited to damages and pre-judgment interest.

Below, the Court: (1) explains its reasons for granting summary judgment on January 21, 2011; (2) awards Plaintiff a judgment on its claims; and (3) awards Plaintiff attorneys' fees and costs.

## BACKGROUND

This is a Perishable Agricultural Commodities Act ("PACA") case. Under PACA, produce sellers become the beneficiaries of a constructive, statutory trust that lasts until they get paid. This trust consists of all produce-related assets, including produce inventory, receipts, and accounts receivable.

In this case, Plaintiff sold $52,110.25 worth of goods to Defendant Sweet & Savory Fine Foods, Inc. ("Sweet & Savory"), including $48,826.45 worth of produce protected by a PACA trust. Pl. 56.1 Stmt. ¶¶ 6, 8. Sweet & Savory's President, Defendant Rocco Macchia held a position of control over the PACA trust assets, and also personally guaranteed Sweet & Savory's debts to Plaintiff. Id. ¶¶ 3, 5. Mr. Macchia's personal guaranty provided that he would pay "all reasonable costs and attorney's fees necessary for collection, and enforcement of this guaranty." Id. ¶ 5; Am. Compl. Ex. A.

After selling the goods, Plaintiff sent invoices to Defendants that contained the PACA trust language required by 7

---

the Court hopes to save both parties' time and attorneys' fees.

U.S.C. § 499e(c)(4). Pl. 56. 1 Stmt. ¶ 8; Pl. Motion for Prelim. Inj. Exs. 2, 4. However, these invoices incorrectly identified Sweet & Savory as "S&S," and listed the wrong address. Def. 56.1 Stmt. ¶ 8; Pl. Motion for Prelim. Inj. Exs. 2, 4. "S&S Fine Foods" functioned as one of Sweet & Savory's registered assumed names, but was not the entity's formal legal name. Def. Pre-Motion Letter at 1. Despite these technical imperfections, Defendants do not dispute that they actually received the invoices. And, in their Amended Answer, Defendants expressly admitted that "Plaintiff sold to Defendants $52,110.25, of which $48,826.45 is due under the PACA," and further admitted that the entire $52,110.25 remains due. Am. Answer ¶¶ 6-7.

No factual issues are in dispute. However, Defendants argue that Plaintiff's PACA claims fail because the invoices directed to "S&S" failed to strictly comply with PACA's notice provisions. And Defendants further contend that the Court lacks supplemental jurisdiction over Plaintiff's common law contract claims, including the claim to enforce Mr. Macchia's personal guarantee.

## DISCUSSION

I. <u>Standard of Review</u>

"Summary judgment is appropriate where there are no genuine disputes concerning any material facts, and where the moving party is entitled to judgment as a matter of law." <u>Harvis Trien & Beck, P.C. v. Fed. Home Loan Mortgage Corp. (In re Blackwood Assocs., L.P.)</u>, 153 F.3d 61, 67 (2d Cir. 1998) (citing Fed. R. Civ. P. 56(c)).

"The burden of showing the absence of any genuine dispute

3

as to a material fact rests on the party seeking summary judgment." McLee v. Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997). "In assessing the record to determine whether there is a genuine issue to be tried as to any material fact, the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." McLee, 109 F.3d at 134.

"Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact, once such a showing is made, the non-movant must 'set forth specific facts showing that there is a genuine issue for trial.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (internal quotations and citations omitted). "Mere conclusory allegations or denials will not suffice." William v. Smith, 781 F.2d 319, 323 (2d Cir. 1986).

II. PACA Claim

The PACA claim is simple to address. Defendants contend that this claim fails because Plaintiff did not strictly comply with PACA's notice provisions. In this regard, Defendants note that the invoices incorrectly identified the buyer as "S&S," not Sweet & Savory, and listed the wrong address. Plaintiff responds that its notice sufficiently complied with PACA.

The Court agrees with Plaintiff. As an initial matter, Defendants' Amended Answer precludes their imperfect notice defense. In the Amended Answer, Defendants expressly admitted that they purchased $52,110.25 worth of goods, "of which $48,826.45 is due

4

under the PACA." Am. Answer ¶ 6. In so doing, the Court finds that Defendants conceded PACA liability. See N.L.R.B. v. Consolidated Bus Transit, Inc., 577 F.3d 467, 474 (2d Cir. 2009) ("[f]acts admitted in an answer, as in any pleading, are judicial admissions that bind the defendant throughout [the] litigation").

But even if Defendants had not made this admission, the Court would still reject their strict compliance argument, at least as applied to these facts. True, there is no Second Circuit law on point.[3] And reasonable jurists have disagreed about whether PACA demands strict or substantial compliance with its notice requirements. But, in considering the facts before it, the Court believes that the weight of authority rejects Defendant's position.

In so reasoning, the Court notes first that Plaintiff strictly complied with PACA's statutory text. By statute, PACA requires produce sellers only to give "written notice of intent to preserve the benefits of the trust to the commission merchant, dealer, or broker," provide "information in sufficient detail to identify the transaction subject to the trust," and contain certain statutory language reflecting that PACA's trust provisions govern. 7 U.S.C. § 499e(c)(3) and 499e(c)(4). And here, there is no dispute

---

[3] In could be argued that American Banana Co., Inc. v. Republic Nat. Bank of New York, N.A., 362 F.3d 33, 42 (2d Cir. 2004), has some relevance. It does not. American Banana Co. concerned PACA's "[s]trict eligibility requirements" insofar as it held that PACA offered protection only to short-term creditors. It did not address how strictly eligible produce sellers must comply with PACA's statutory or regulatory notice provisions.

5

that Plaintiff's notice complied with all these statutory provisions, and that Defendants actually received that notice. Thus, this is not a case about whether PACA demands strict compliance with Congress' own words.

Rather, the parties' legal dispute concerns Plaintiff's compliance with one of PACA's implementing regulations, 7 C.F.R. 46.46(f)(i). That regulation requires a PACA notice to include the "names and addresses of the trust beneficiary, seller-supplier, commission merchant, or agent and the debtor, as applicable." Id. And here, Defendants argue that Plaintiff's notices fail because they incorrectly identified the buyer as "S&S," not Sweet & Savory, and listed the wrong address. But Defendants do not argue that Plaintiff's notices otherwise violated the applicable regulations. Thus, there is no dispute that Plaintiff provided Defendants with actual written notice of its intent to preserve its PACA rights, that Defendants timely received this notice, and that this notice contained all the factual information that PACA requires. As such, the Court finds that Plaintiff substantially complied with PACA's regulatory scheme.

The question thus turns to whether this substantial compliance is enough. At least on the facts presented here, the Court finds that it is. The weight of authority (albeit limited) does not require strict compliance with PACA's regulatory notice requirements, and instead permits substantial compliance. See Hull Co. v. Hauser's Foods, Inc., 924 F.2d 777, 782 (8th Cir. 1991)

(substantial compliance with PACA's notice regulations suffices); Valley Chip Sales, Inc. v. New Arts Tater Chip Co., 96-CV-2351, 1996 WL 707028, at *4 (D. Kan. 1996); In re Carlton Fruit Co., 84 B.R. 810, 812 (M.D. Fl. Bankr. 1988); see also In re San Joaquin Food Service, Inc., 958 F.2d 938, 940 (9th Cir. 1992) (requiring strict compliance with PACA's statutory text, but suggesting that substantial compliance with its implementing regulations suffices); Atlantic Coast Produce, Inc. v. McDonald Farms, Inc., 04-CV-0015, 2005 WL 1785137, at *1-2 (W.D. Va. 2005) (permitting substantial compliance with statutory text).[4] Given this law, and Defendants actual receipt of the invoices, the Court attaches no significance to Plaintiff's invoices identifying Sweet & Savory as "S&S," rather than its formal legal name, and listing the incorrect address.

Consequently, the Court GRANTS Plaintiff summary judgment on Counts 1 and 3 of the Amended Complaint, which allege PACA causes

---

[4] In opposing summary judgment, Defendants rely on four Second Circuit district cases. Of these, only one supports Defendants' argument that a produce seller must strictly comply with PACA's notice regulations. See In re Chipwich, Inc., 165 B.R. 135 (S.D.N.Y. Bankr. 1994). The second concerned a failure to strictly comply with PACA's statutory requirements. See Hintz & Reiman, Inc. v. J&J Produce, 05-CV-5739, 2006 WL 709106, at *3 (S.D.N.Y. 2006). The third concerned a failure to adduce evidence "that the invoices were ever provided to" defendants. A & J Produce Corp. v. Chang, 385 F. Supp. 2d 354, 362 (S.D.N.Y. 2005). And the fourth, if anything, supports Plaintiff's argument that invoices do not need to list a defendant's correct legal name. See Horizon Marketing v. Kingdom Intern. Ltd., 244 F. Supp. 2d 131, 142 (E.D.N.Y. 2003) (invoices sent to "Kingdom/Dongkurami" preserved PACA trust rights against Defendant Kingdom International Limited). The Court submits that In re Chipwich, a 1994 Bankruptcy Court decision, is inconsistent with the weight of authority, while Defendants' remaining cases do not support their position.

7

of action.

III. Contractual Claims

Counts 2 and 4 of the Amended Complaint allege common law contract causes of action, with Count 4 alleging that Mr. Macchia breached the personal guaranty he gave Plaintiff. Defendants' Rule 56.1 Statement expressly admits liability under these claims. Def. 56.1 Stmt. ¶¶ 5-6. Defendants only defense is jurisdictional, arguing that the Court should not exercise supplemental jurisdiction over these claims, in light of purported defects with Plaintiff's federal causes of action.

Because the Court has awarded Plaintiff summary judgment on the PACA claims, it does not technically reach Defendants' jurisdictional arguments. Nevertheless, the Court wishes to clarify that, even if it dismissed Plaintiff's federal claims, it would still have used its discretion to exercise supplemental jurisdiction here. The "values of judicial economy, convenience, fairness, and comity" support exercising supplemental jurisdiction at the summary judgment stage when: (1) discovery is complete, (2) the state claims are far from novel, and (3) the state and federal claims are substantially identical. See Winter v. Northrup, 334 Fed. Appx. 344, 345-346 (2d Cir. 2009) (internal citations and quotations omitted). All three of these prongs are met here. Indeed, this is the strongest case for exercising supplemental jurisdiction that the Court has ever seen. Not only has discovery been complete, but no facts are in dispute. The state claims are not only "far from novel," they are contract-

8

based and wholly uncontested, with Defendants admitting that they lack any factual or legal defenses to them. Thus, the Court need not even try this case, or spend significant time researching a contested summary judgment motion. It need only issue this Order. Finally, the state claims differ from the federal claims only in that they are simpler, with Defendants fully conceding liability.

Thus, the Court GRANTS Plaintiff summary judgment on Claims 2 and 4 as well.

IV. Damages, Attorneys' Fees, and Costs

On January 21, 2011, the Court directed Plaintiff to submit "a short statement of damages that, among other things, properly calculates prejudgment interest." Plaintiff has done so, and included in this statement a request for attorneys' fees and costs. Specifically, Plaintiff requests $52,110.25 in principal (including $48,826.45 due under the PACA), $9,208.23 in interest through January 21, 2011, $17,968.27 in attorneys' fees, and $388.30 in costs. Defendants have not opposed Plaintiff's submission.

As the Court describes above, there is no material dispute that Defendants owe Plaintiff $52,110.25 in principal, including $48,826 under the PACA trust. Thus, those sums are awarded.

Plaintiff's interest request is also awarded. Plaintiff's invoices provide for prejudgment interest at an 18% annual rate on the purchases made under PACA. See Pl. 56.1 Stmt. ¶ 9; Pl. Motion for Prelim. Inj. Exs. 2, 4. Plaintiff's spreadsheet meticulously calculates prejudgment interest on each unpaid invoice through

9

January 21, 2011. Pl. Stmt. of Damages, Ex. A. And Defendants do not dispute Plaintiff's calculations. Consequently, the Court awards Plaintiff $9,208.23 in interest, nunc pro tunc to January 21, 2011. It follows then that the Clerk of the Court is directed to enter a Judgment in Plaintiff's favor on the Amended Complaint, nunc pro tunc to January 21, 2011, in the following amounts: (1) $52,110.25 in principal (including $48,826.25 due under PACA); and (2) $9,208.23 in interest (all of it due under PACA).[5]

Finally, Court also approves Plaintiff's request for attorneys' fees and costs. Plaintiff's invoices, on their face, entitle Plaintiff to recover "all cost of collection," including "reasonable attorney's fee[s]."[6] See Pl. 56.1 Stmt. ¶ 9, Pl. Motion for Prelim. Inj. Exs. 2, 4. Likewise, Mr. Macchia's personal guaranty obligates him to "pay all reasonable attorney's fees necessary for collection and enforcement of this guaranty." Am. Compl. Ex. A.

Here, Plaintiff seeks $17,968.27 in attorneys' fees and $388.30 in costs. This request reflects 78.7 hours of billable time, at rates ranging from $240 to $305 an hour for associate work, and $300 to $325 an hour for partner work. The Court considers the amount of time Plaintiff's attorneys expended modest and reasonable,

---

[5] Attorneys' fees and prejudgment interest should be awarded as "sums owing in connection with" PACA transactions. Coosemans Specialties, Inc. v. Gargiulo, 485 F.3d 701, 709 (2d Cir. 2007) (attorneys' fees); A&J Produce Corp. v. Watermelon Exp., LLC, 08-CV-1850, 2010 WL 5395067, at *6 (D. Conn. Dec. 23, 2010) (prejudgment interest).

[6] These sums are also due under PACA. See supra note 5.

when considering that it includes fact investigation, drafting a Complaint and Amended Complaint, preparing preliminary injunction papers, preparing a 56.1 Statement, drafting the pre-motion conference letter, attending four court conferences, and preparing the damages submission. Similarly, the Court also finds that Plaintiff seeks reimbursement for partner work at a fair and reasonable rate. See Artemide Inc. v. Spero Elec. Corp., 09-CV-1110, 2010 WL 5452075, at *4 (E.D.N.Y. Nov. 23, 2010) (authorizing $350 an hour for partner work).

Plaintiff's request to receive $305 per hour for associate Kate Ellis' work requires a little more discussion. In the Eastern District, "it has been determined that reasonable hourly rates are . . . $175-$295 per hour for senior associates." Field Day, LLC v. County of Suffolk, 04-CV-2202, 2010 WL 5491025, at *3 (E.D.N.Y. Sep. 9, 2010) (collecting cases). Notwithstanding that authority, the Court finds that Plaintiff is entitled to $305 an hour for Ms. Ellis' work here. The Court does so for the following reasons. First, Ms. Ellis is unquestionably a senior associate, having been admitted in Maryland since 2004. Second, Eastern District courts have awarded $295 an hour for senior associate work since 2002. See General Motors Corp. v. Villa Marin Chevrolet, Inc., 240 F. Supp. 2d 182, 188 (E.D.N.Y. 2002). It is now 2011, and a modest $10 an hour bump does not come close to capturing inflation over the past nine years.[7]

---

[7] The United States suffered cumulative inflation of 21.2% between 2002 and 2010. See generally http://www.usinflationcalculator.com/

11

Third, Ms. Ellis represents that she has been practicing PACA law exclusively since 2004, indicating that she is highly specialized in a relatively obscure field. And finally, Plaintiff's attorneys (including, presumably, Ms. Ellis) have litigated exceptionally well. Indeed, because Plaintiff's attorneys laid out the relevant facts and law so clearly without formal summary judgment briefing, the Court found such briefing unnecessary – saving innumerable hours of attorney time and fees. Given the quality of this work, awarding Plaintiff the high range appropriate for senior associate work is fair and reasonable.

Plaintiff's request for costs is a slightly different matter. Plaintiff's costs request includes a $175.48 charge for "1" quantity of "Levinson Photocopying Photocopying [sic]." Plaintiff does not adequately explain this cost, or what it represents. Consequently, the Court awards Plaintiff only $212.82 in costs.

## CONCLUSION

As the Court previously ruled on January 21, Plaintiff's summary judgment is GRANTED. The Clerk of the Court is directed to docket a Judgment in Plaintiff's favor, nunc pro tunc to January 21, in the following amounts: (1) $52,110.25 in principal (including $48,826.25 due under PACA); and (2) $9,208.23 in interest (all of it due under PACA). The Clerk of the Court is also directed to docket an award of attorneys' fees and costs in the following amounts: (1) $17,968.27 (all of it due under PACA); and (2) $212.82 in costs (all

---

(last visited January 31, 2011).

of it due under PACA).

                                              SO ORDERED

                                            /s/ JOANNA SEYBERT
                                            Joanna Seybert, U.S.D.J.

Dated:    February 4, 2011
           Central Islip, New York